**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF MICHIGAN**
**SOUTHERN DIVISION**

FREDRICK BROWN, III,

      Petitioner,                     Civil No. 2:11-CV-10571
                                       HONORABLE ARTHUR J. TARNOW
v.                                   UNITED STATES DISTRICT JUDGE

DAVID BERGH,

      Respondent,
_____/

**OPINION AND ORDER DENYING THE PETITION FOR WRIT OF HABEAS CORPUS,**
**DECLINING TO ISSUE A CERTIFICATE OF APPEALABILITY, AND GRANTING**
**LEAVE TO APPEAL IN FORMA PAUPERIS**

      Fredrick Brown, III, ("Petitioner"), presently confined at the Thumb Correctional

Facility in Lapeer, Michigan, has filed a petition for writ of habeas corpus pursuant to 28

U.S.C. § 2254. [1]  In his application, filed *pro se*, petitioner challenges his convictions for

first-degree felony murder, M.C.L.A. 750.316; assault with intent to commit armed

robbery, M.C.L.A. 750.89; felon in possession of a firearm, M.C.L.A. 750.224f;

possession of a firearm in the commission of a felony, M.C.L.A. 750.227b; and being a

second felony habitual offender, M.C.L.A. 769.10.  For the reasons that follow, the

petition for writ of habeas corpus is DENIED.

---

      [1]  When petitioner originally filed his petition for writ of habeas corpus, he was
incarcerated at the Michigan Reformatory, but has since been transferred to the Thumb
Correctional Facility.  The only proper respondent in a habeas case is the habeas
petitioner's custodian, which in the case of an incarcerated habeas petitioner would be
the warden of the facility where the petitioner is incarcerated. *See Edwards Johns,* 450
F. Supp. 2d 755, 757 (E.D. Mich. 2006); *See also* Rule 2(a), 28 foll. U.S.C. § 2254.
Therefore, the Court substitutes Warden David Bergh in the caption.

1

*Brown v. Bergh,* U.S.D.C. No. 2:11-CV-10571

## I. Background

Petitioner was found guilty of the above offenses following a jury trial in the Genesee County Circuit Court.  The evidence established that petitioner and co-defendant John Swinehart unlawfully entered a house in Flint, Michigan in the early morning of November 14, 2007, struck the complainant Renardo Gillespie in the face with a pistol during an attempt to rob him, and then, after a struggle over the gun, shot and killed the complainant.

Dedric Sharp was a guest at Gillespie's home on the night in question.  Sharp was awakened during the early morning hours by Mr. Gillespie, who told Sharp that he was taking his girlfriend Nicole Jones to work.  A short time later, Sharp heard a knock on the door.  Sharp opened the door and observed Gillespie, Jones, John Swinehart and petitioner standing outside the door.  Petitioner displayed a gun.  Sharp knew Swinehart and petitioner. (Tr. I, pp. 210-15, 218).  Gillespie informed Sharp that they were being robbed.  While Swinehart searched the house, petitioner struck Gillespie in the face with a gun.  (*Id.,* pp. 220-21, 224, 272).  Gillespie stated: "Come on Fred, ... we supposed to be like family." (*Id.,* p. 227).  Gillespie and petitioner began struggling over the gun, before petitioner shot Gillespie.  Sharp testified that he heard 5-6 shots. (*Id.,* pp. 231-32).  Sharp later identified the suspects to police by name, referring to them as "Fred" and "RuRu." (*Id.,* pp. 244, 247).  At some point after the incident, Sharp was incarcerated as an inmate at the Genesee County Jail, where petitioner was also incarcerated.  The two men got into a fight over Gillespie's murder. (*Id.,* pp. 238-39).

2

*Brown v. Bergh,* U.S.D.C. No. 2:11-CV-10571

Nicole Jones testified that when she left Gillespie's house to go to work on the morning in question, Gillespie and another man were standing near her car, which was parked in front of the house. The other man forced Gillespie onto the porch, and a second man subsequently appeared and ordered Jones onto the porch as well. (Tr. II, pp. 16, 18, 19, 22). Sharp opened the door and Jones and Gillespie were forced back into the house. Jones testified that one of the men pointed a gun at Gillespie and accused him of taking money from someone else. Jones testified that Gillespie called the gunman "Fred." (*Id.,* pp. 31-32). While all of this was taking place, the second man went through Gillespie's house searching for money. Though neither man found any money, Gillespie offered his assailants the money that he had in his pocket. Gillespie and the man identified as "Fred" began wrestling over the gun. Jones ran to a back bedroom where she heard 4-5 gunshots. The two intruders ran from the house. (*Id.,* pp. 35, 39-40). Jones testified that although she had never seen the man identified as "Fred" before, she had seen the second man, whom she identified as "Ru-Ru" (also spelled in the record as "Rue-Rue" and "DaRue."). At a photographic show-up conducted on November 16, 2007, Jones said that men in two different photos looked like "Fred." (*Id.,* pp. 45-46, 227-28). Jones also viewed a live line-up, but did not positively identify petitioner as one of the perpetrators, even though he participated in that line-up. (*Id.,* p. 242).

Ashley Hill was also staying at Gillespie's home on the night in question. Hill was woken up early in the morning by the sound of arguing and people stumbling back into the house. The man that Hill identified as "DaRue" walked her into the living room

3

*Brown v. Bergh,* U.S.D.C. No. 2:11-CV-10571

where she saw Gillespie on the floor, with a man she referred to as "Fred" standing over him with a gun.  Ms. Hill identified petitioner as the man she called "Fred." (Tr. III, pp. 32-39, 42).  Petitioner told Gillespie that he should not have been stealing from "Pooh Bear."  Repeatedly referring to "Fred" by name, Gillespie denied stealing from anyone, but offered to give "Fred" all the money he had in his pocket, roughly around $1,000.00. (*Id.,* pp. 43-45, 50-51).  The men struggled over the gun, before 3-4 shots were fired. Gillespie fell to the floor, while petitioner ran from the house with the gun still in his hand. (*Id.,* pp. 54-55, 57).  Hill showed the police a photograph of "Fred" that she had located on My Space and testified that he was one of two men she picked out at a live line-up (*Id.,* pp. 64-65, 69).  A police officer testified that Hill viewed a photo array and positively identified two people, one of whom was petitioner. (Tr. II, p. 231).

Taleah Pugh is petitioner's cousin.  Pugh testified that petitioner and Johnnie Swinehart came to her home around 6:30 a.m. on November 14, 2007. Petitioner was carrying a gun.  Swinehart told her that Renaldo Gillespie had been shot. (Tr. II, pp. 73, 77-78, 81, 96).

Johnnie Swinehart entered into a plea agreement with the Genesee County Prosecutor, in which he agreed to testify against petitioner, in exchange for a reduction in the charges against him. (Tr. II, pp. 128-29, 172-74).  Swinehart testified that he and petitioner intended to recover money that Gillespie had stolen and that they planned on splitting the money they recovered with "Pooh Bear." (*Id.,* pp. 132, 137).  The men parked their vehicle a block from Gillespie's house.  When the men exited their vehicle, Swinehart saw that petitioner had a gun.  When Gillespie exited the house, petitioner

4

*Brown v. Bergh,* U.S.D.C. No. 2:11-CV-10571

pointed a gun at Gillespie's head and ordered him back inside. (*Id.,* pp. 142, 147, 149,

184).  Petitioner asked Gillespie several times about the money.  After a struggle broke

out over the gun, Swinehart heard at least three gunshots.  Swinehart and petitioner ran

outside to their car.  Mr. Swinehart asked petitioner what happened.  Petitioner replied

that he "did not have any choice" because Gillespie had tried to take his gun away from

him. (*Id.,* pp.157, 160-61).

Petitioner's conviction was affirmed on appeal. *People v. Brown,* No. 289348

(Mich.Ct.App. May 11, 2010); *lv. Den.* 488 Mich. 913, 789 N.W.2d 470 (2010).

Petitioner seeks a writ of habeas corpus on the following grounds:

I.  Prosecutorial misconduct.

II.  Instructional error and ineffective assistance of counsel.

III.  Abuse of discretion-admission of photographs.

## II.  Standard of Review

28 U.S.C. § 2254(d), as amended by The Antiterrorism and Effective Death

Penalty Act of 1996 (AEDPA), imposes the following standard of review for habeas

cases:

> An application for a writ of habeas corpus on behalf of a person in custody
> pursuant to the judgment of a State court shall not be granted with respect
> to any claim that was adjudicated on the merits in State court proceedings
> unless the adjudication of the claim–
>
> > (1)     resulted in a decision that was contrary to, or
> > involved an unreasonable application of, clearly
> > established Federal law, as determined by the Supreme
> > Court of the United States; or

*Brown v. Bergh,* U.S.D.C. No. 2:11-CV-10571

(2)    resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

A decision of a state court is "contrary to" clearly established federal law if the state court arrives at a conclusion opposite to that reached by the Supreme Court on a question of law or if the state court decides a case differently than the Supreme Court has on a set of materially indistinguishable facts. *Williams v. Taylor*, 529 U.S. 362, 405-06 (2000). An "unreasonable application" occurs when "a state court decision unreasonably applies the law of [the Supreme Court] to the facts of a prisoner's case." *Id.* at 409. A federal habeas court may not "issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly." *Id.* at 410-11.

The Supreme Court has explained that "[A] federal court's collateral review of a state-court decision must be consistent with the respect due state courts in our federal system." *Miller-El v. Cockrell*, 537 U.S. 322, 340 (2003). The "AEDPA thus imposes a 'highly deferential standard for evaluating state-court rulings,'and 'demands that state-court decisions be given the benefit of the doubt.'" *Renico v. Lett*, 130 S. Ct. 1855, 1862 (2010)((quoting *Lindh v. Murphy*, 521 U.S. 320, 333, n. 7 (1997); *Woodford v. Viscotti*, 537 U.S. 19, 24 (2002) (*per curiam*)). "[A] state court's determination that a claim lacks merit precludes federal habeas relief so long as 'fairminded jurists could disagree' on the correctness of the state court's decision." *Harrington v. Richter*, 131 S. Ct. 770, 786 (2011)(citing *Yarborough v. Alvarado*, 541 U.S. 652, 664 (2004)).

6

*Brown v. Bergh,* U.S.D.C. No. 2:11-CV-10571

### III.  Discussion

**A.  The prosecutorial misconduct claim.**

Petitioner first claims that the prosecutor committed misconduct by mentioning in her closing argument that petitioner had failed to produce an alibi witness at trial. Petitioner claims that this shifted the burden of proof to petitioner and amounted to an impermissible comment on petitioner's failure to testify.

Petitioner's trial counsel informed the jury in his opening statement that he would be producing an alibi witness. (Tr. I, p. 182).  This witness, however, was not presented at trial.  In her closing, the prosecutor commented on the missing alibi witness:

> You heard, in opening statements, that you would hear from Sherry Blasengame [sic].  You didn't, Ladies and Gentlemen.  You did not hear any evidence that Fredrick Brown was anywhere other than at 2205 Howard Avenue on November 14th.  No other evidence and that that man went into the home of Nicole Jones, Ashley Hill, Renardo Gillespie, where Dedric Sharp was staying, without permission, with a gun; that he tried to rob Renardo Gillespie, and did, of what he had in his possession.  And that's the evidence that's before you, Ladies and Gentlemen.

(Tr. III, 123).

The Michigan Court of Appeals rejected petitioner's claim:

> Generally, a prosecutor may not comment on a defendant's failure to produce an alibi witness on the basis of the defendant's earlier notice of intent to present an alibi defense where the defendant "effectively withdraws his notice of alibi by failing to present any evidence on the defense...."*People v. Holland*, 179 Mich.App. 184, 190, 445 N.W.2d 206 (1989).  However, once a defendant actually presents an alibi defense, the prosecution may comment on the weakness of the defense and the defendant's failure to produce corroborating witnesses. *Id.* at 191, 445 N.W.2d 206.

*Brown v. Bergh,* U.S.D.C. No. 2:11-CV-10571

In his opening statement, defendant's trial counsel told the jury that defendant's significant other would testify that she was with defendant at the time of the offense. This statement was sufficient to place alibi at issue and, therefore, the prosecution could properly note that defendant did not support his alibi defense. *Id.* Therefore, there was no error.

In any event, even if we were to conclude that the prosecutor's comments were improper, we note that the trial court properly instructed the jury that defendant was innocent until proven guilty, that the prosecution bears the burden of proving each element of each charged crime beyond a reasonable doubt, that defendant had an absolute right not to testify, and that the attorneys' statements and arguments were not evidence. These instructions dispelled any minimal prejudice arising from the prosecution's comment. *See People v. Bahoda*, 448 Mich. 261, 281, 531 N.W.2d 659 (1995). Therefore, the comments do not warrant appellate relief.

*Brown,* Slip. Op. at * 2.

"Claims of prosecutorial misconduct are reviewed deferentially on habeas review." *Millender v. Adams*, 376 F.3d 520, 528 (6th Cir. 2004)(citing *Bowling v. Parker*, 344 F.3d 487, 512 (6th Cir. 2003)).  A prosecutor's improper comments will be held to violate a criminal defendant's constitutional rights only if they "'so infected the trial with unfairness as to make the resulting conviction a denial of due process.'" *Darden v. Wainwright*, 477 U.S. 168, 181 (1986)(quoting *Donnelly v. DeChristoforo*, 416 U.S. 637, 643 (1974)).  Prosecutorial misconduct will thus form the basis for habeas relief only if the conduct was so egregious as to render the entire trial fundamentally unfair based on the totality of the circumstances. *Donnelly v. DeChristoforo*, 416 U.S. at 643-45.  The determination whether the trial was fundamentally unfair is "made by evaluating the totality of the circumstances surrounding each individual case." *Angel v. Overberg*, 682 F. 2d 605, 608 (6th Cir. 1982).  The Court must focus on "'the fairness of the trial, not the culpability of the prosecutor.'" *Pritchett v. Pitcher*, 117 F. 3d 959, 964

8

*Brown v. Bergh,* U.S.D.C. No. 2:11-CV-10571

(6th Cir. 1997)(quoting *Serra v. Michigan Dep't of Corr.*, 4 F.3d 1348, 1355 (6th Cir.

1993)).  Finally, "[t]he Supreme Court has clearly indicated that the state courts have

substantial breathing room when considering prosecutorial misconduct claims because

'constitutional line drawing [in prosecutorial misconduct cases] is necessarily

imprecise.'" *Slagle v. Bagley*, 457 F. 3d 501, 516 (6th Cir. 2006)(quoting *Donnelly*, 416

U.S. at 645).  Thus, in order to obtain habeas relief on a prosecutorial misconduct

claim, a habeas petitioner must show that the state court's rejection of his prosecutorial

misconduct claim "was so lacking in justification that there was an error well

understood and comprehended in existing law beyond any possibility for fairminded

disagreement." *Parker v. Matthews*, 132 S. Ct. 2148, 2155 (2012)(quoting *Harrington*,

131 S. Ct., at 786–87).  This is particularly so, "because the *Darden* standard is a very

general one, leaving courts 'more leeway ... in reaching outcomes in case-by-case

determinations[,]'". *Id.* (quoting *Yarborough v. Alvarado*, 541 U.S. at 664).

Although a prosecutor may not comment on the failure of a defendant to

produce evidence, the prosecutor may summarize the evidence and comment on its

quantitative and qualitative significance. *United States v. Bond,* 22 F. 3d 662, 669 (6th

Cir. 1994); *See also Byrd v. Collins*, 209 F. 3d 486, 534, n. 41 (6th Cir. 2000).

The prosecutor did not suggest that petitioner bore the burden of proving his

innocence, but instead brought up petitioner's failure to call an alibi witness, who was

promised by defense counsel, to attack the credibility of petitioner's defense.  Under

the circumstances, the prosecutor's remarks, if improper, were not constitutional error

meriting habeas relief.

9

*Brown v. Bergh,* U.S.D.C. No. 2:11-CV-10571

Even if assuming that the prosecutor's comments were improper, they were only a brief part of a fairly lengthy closing argument. (Tr. III, pp. 118-26; 143-49). Because the prosecutor's comments about petitioner's failure to produce an alibi witness were isolated and not flagrant, petitioner was not deprived of a fair trial by these comments. *See Traylor v. Price,* 239 Fed. Appx. 235, 242 (6th Cir. 2007).

Moreover, the trial court instructed the jury that petitioner was presumed innocent and that the prosecutor had the burden of proving petitioner's guilt beyond a reasonable doubt and that the defendant was not required to prove his innocence. The trial court also advised the jury that a defendant in a criminal case has an absolute right not to testify and that his failure to testify could not affect the jury's verdict. (Tr. III, pp. 150-51). The prosecution's comments about petitioner's failure to produce his alibi witness did not deprive petitioner of a fair trial, because any possible prejudice which might have resulted from the comments was cured by the trial court's instructions regarding the proper burden of proof. *See Scott v. Elo,* 302 F. 3d 598, 603-04 (6th Cir. 2002).

Finally, the evidence of petitioner's guilt was compelling. Two eyewitnesses positively identified petitioner as the shooter, as did petitioner's co-defendant. Petitioner's own cousin Taleah Pugh testified that petitioner and his co-defendant came over to her house on the night of the shooting. Petitioner was armed with a gun and the co-defendant told Pugh that the victim had been shot. In light of the overwhelming evidence of petitioner's guilt, the prosecutor's remarks about petitioner's failure to produce an alibi witness did not deprive him of a fair trial, so as to entitle him to habeas

10

*Brown v. Bergh,* U.S.D.C. No. 2:11-CV-10571

relief. *Traylor,* 239 Fed. Appx. at 243.  Petitioner is not entitled to habeas relief on his first claim.

**B.  The jury instruction/ineffective assistance of counsel claim.**

Petitioner next contends that the trial court's jury instructions were deficient and that his counsel was ineffective for failing to object to the instructions as given.

The burden of demonstrating that an erroneous instruction was so prejudicial that it will support a collateral attack upon the constitutional validity of a state court conviction is even greater than the showing required in a direct appeal.  The question in such a collateral proceeding is whether the ailing instruction so infected the entire trial that the resulting conviction violates due process, not merely whether the instruction is undesirable, erroneous, or even "universally condemned," and an omission or incomplete instruction is less likely to be prejudicial than a misstatement of the law. *Henderson v. Kibbee*, 431 U.S. 145, 154-155 (1977).  The challenged instruction must not judged in isolation but must be considered in the context of the entire jury charge. *Jones v. United* States, 527 U.S. 373, 391 (1999).  Further, any ambiguity, inconsistency or deficiency in a jury instruction does not by itself necessarily constitute a due process violation. *Waddington v. Sarausad*, 555 U.S. 179, 190 (2009). It is not enough that there might be some "slight possibility" that the jury misapplied the instruction. *Id.* at 191.  Federal habeas courts do not grant relief, as might a state appellate court, simply because a jury instruction may have been deficient in comparison to a model state instruction. *Estelle v. McGuire*, 502 U.S. 62, 72 (1991).

11

*Brown v. Bergh,* U.S.D.C. No. 2:11-CV-10571

Petitioner first contends that the trial judge should have given the jurors a specific unanimity instruction.  Petitioner was charged with felony murder with the underlying predicate felonies being armed robbery, attempted armed robbery, or home invasion.  Although the judge gave the jurors a general unanimity instruction that required that any verdict in the case be unanimous (Tr. III, p. 170), petitioner argues that the judge should have instructed the jurors that they had to agree unanimously about which underlying felony offense should serve as the predicate offense in order to convict petitioner of felony murder.

There is no general requirement that a jury reach agreement as to the preliminary factual issues which underlie the verdict. *Schad v. Arizona,* 501 U.S. 624, 632(1991)(holding that a conviction of first degree murder under instructions that did not require jury to unanimously agree on one of the alternative theories of premeditated and felony murder did not violate due process).  Therefore, the trial court's failure to instruct the jury that they must unanimously agree on which underlying felony offense that petitioner had committed in order to find him guilty of felony murder did not violate clearly established federal law so as to entitle petitioner to habeas relief. *See Reed v. Quarterman,* 504 F. 3d 465, 479-82 (5th Cir. 2007).  Although there may have been various means by which petitioner committed the felony murder, "no unanimity instruction with regard to these various means was necessary." *U.S. v. Davis*, 306 F. 3d 398, 414 (6th Cir. 2002).  Because there is no Supreme Court precedent which holds that a jury must agree on the factual issues which underly the verdict, petitioner is not

12

*Brown v. Bergh,* U.S.D.C. No. 2:11-CV-10571

entitled to habeas relief on his claim about jury unanimity. *See Rodriguez v. Jones,* 625 F. Supp. 2d 552, 569 (E.D. Mich. 2009).

Petitioner next contends that the felony murder instruction that was given by the trial judge was defective because it permitted the jury to convict petitioner by using assault with intent to rob while armed as the predicate felony even though this offense is not one of the enumerated felonies under the felony murder statute.

In rejecting this claim, the Michigan Court of Appeals noted that although assault with intent to rob while armed is not specifically listed as a predicate felony under Michigan's felony murder statute, the Michigan Court of Appeals had previously "determined that assault with intent to rob while armed is a species of robbery within the meaning" of M.C.L.A. 750.316(1)(b), Michigan's felony murder statute. *Brown,* Slip. Op. at * 4 (citing *People v. Akins*, 259 Mich.App. 545, 552–553, 675 N.W.2d 863 (2003)). The Michigan Court of Appeals thus concluded that although assault with intent to rob while armed was not listed as a predicate on petitioner's information, it could serve as an underlying predicate felony for purposes of the felony murder charge. *Id.*

Federal courts are bound by the state courts' interpretation of their own laws. *See Mullaney v. Wilbur*, 421 U.S. 684, 690-91 (1975). The nature of a particular jury instruction that is given is a matter of state law, and a federal court is not at liberty to grant a writ of habeas corpus simply because the federal court finds the state court's decision was incorrect under state law. *Newton v. Million*, 349 F.3d 873, 879 (6th Cir. 2003). Because the Michigan Court of Appeals found that the instruction given by the

13

*Brown v. Bergh,* U.S.D.C. No. 2:11-CV-10571

trial court accurately reflected Michigan law that assault with intent to rob while armed

was a type of robbery that could be used as a predicate offense under Michigan's

felony murder statute, this Court must defer to that determination and cannot question

it. *See Seymour v. Walker*, 224 F. 3d 542, 558 (6th Cir. 2000).  Petitioner is not entitled

to habeas relief on his instructional error claims.

The Court rejects petitioner's related ineffective assistance of counsel claim.  To

show that he was denied the effective assistance of counsel under federal

constitutional standards, a defendant must satisfy a two prong test.  First, the

defendant must demonstrate that, considering all of the circumstances, counsel's

performance was so deficient that the attorney was not functioning as the "counsel"

guaranteed by the Sixth Amendment. *Strickland v. Washington*, 466 U.S. 668, 687

(1984).  In so doing, the defendant must overcome a strong presumption that counsel's

behavior lies within the wide range of reasonable professional assistance. *Id.*  In other

words, petitioner must overcome the presumption that, under the circumstances, the

challenged action might be sound trial strategy. *Strickland,* 466 U.S. at 689.  Second,

the defendant must show that such performance prejudiced his defense. *Id.*  To

demonstrate prejudice, the defendant must show that "there is a reasonable probability

that, but for counsel's unprofessional errors, the result of the proceeding would have

been different." *Strickland,* 466 U.S. at 694.

Petitioner first contends that trial counsel was ineffective for failing to request an

instruction to the jurors that they must unanimously agree on the underlying predicate

felony in order to find petitioner guilty of felony murder.  This Court has already noted

14

*Brown v. Bergh,* U.S.D.C. No. 2:11-CV-10571

that jurors are not required to unanimously agree to the specific facts underlying the verdict.  Because there was no basis for the trial court to issue such a unanimity instruction, counsel was not ineffective for failing to request it. *See Shafer v. Wilson,* 364 Fed. Appx. 940, 948-49 (6th Cir. 2010).

Petitioner next contends that his trial counsel failed to object to the allegedly improper felony murder instruction.  However, the Michigan Court of Appeals concluded that the felony murder instruction given in this case was an accurate reflection of Michigan law.  In light of the fact that the Michigan Court of Appeals determined that it was proper under Michigan law to instruct the jury that assault with intent to rob while armed could be used as the predicate felony for felony murder, petitioner is unable to establish that counsel was ineffective for failing to object to the instruction as given. *See e.g. Davis v. Morgan,* 89 Fed. Appx. 932, 936-37 (6th Cir. 2003).  Petitioner is not entitled to habeas relief on his second claim.

**C.    The claim involving the admission of the photographs of the murder victim.**

Petitioner lastly contends that the trial court improperly admitted autopsy photographs of the murder victim.

It is well settled that alleged trial court errors in the application of state procedure or evidentiary law, particularly regarding the admissibility of evidence, are generally not cognizable as grounds for federal habeas relief. *See Estelle v. McGuire*, 502 U.S. at 67-68.  Petitioner's claim that the trial court admitted photographs of the murder victim fails to state a claim upon which habeas relief can be granted. *See e.g.*

15

*Brown v. Bergh,* U.S.D.C. No. 2:11-CV-10571

*Franklin v. Bradshaw,* 695 F. 3d 439, 456-57 (6th Cir. 2012); *cert. den. sub nom*

*Franklin v. Robinson,* 133 S. Ct. 1724 (2013); *Cooey v. Coyle,* 289 F. 3d 882, 893-94

(6th Cir. 2002).

### D.  A certificate of appealability.

A habeas petitioner must receive a certificate of appealability ("COA") in order to appeal the denial of a habeas petition for relief from either a state or federal conviction. 28 U.S.C. §§ 2253(c)(1)(A), (B).  A court may issue a COA "only if the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2).  When a federal district court rejects a habeas claim on the merits, the substantial showing threshold is met if the petitioner demonstrates that reasonable jurists would find the district court's assessment of the constitutional claim debatable or wrong. *See Slack v. McDaniel*, 529 U.S. 473, 484-85 (2000).  "A petitioner satisfies this standard by demonstrating that ... jurists could conclude the issues presented are adequate to deserve encouragement to proceed further." *Miller-El v. Cockrell*, 537 U.S. 322, 327 (2003).  In applying this standard, a district court may not conduct a full merits review, but must limit its examination to a threshold inquiry into the underlying merit of the petitioner's claims. *Id.* at 336-37.

The Court will deny a certificate of appealability, because jurists of reason would not find the Court's resolution of the claims to be debatable.

Although this Court will deny a certificate of appealability to petitioner, the standard for granting an application for leave to proceed *in forma pauperis* (IFP) is a lower standard than the standard for certificates of appealability. *See Foster v.*

16

*Brown v. Bergh,* U.S.D.C. No. 2:11-CV-10571

*Ludwick,* 208 F. Supp. 2d 750, 764 (E.D. Mich. 2002)(citing *United States v.*
*Youngblood*, 116 F. 3d 1113, 1115 (5th Cir. 1997)).  Whereas a certificate of
appealability may only be granted if petitioner makes a substantial showing of the
denial of a constitutional right , a court may grant IFP status if it finds that an appeal is
being taken in good faith. *Id.* at 764-65; 28 U.S.C. § 1915(a)(3); Fed. R.App.24 (a).
"Good faith" requires a showing that the issues raised are not frivolous; it does not
require a showing of probable success on the merits. *Foster,* 208 F. Supp. 2d at 765.
Although jurists of reason would not debate this Court's resolution of petitioner's
claims, the issues are not frivolous; therefore, an appeal could be taken in good faith
and petitioner may proceed *in forma pauperis* on appeal. *Id.*


## IV. CONCLUSION

For the reasons stated above, this Court concludes that Petitioner Brown is not
entitled to federal-habeas relief on the claims presented in his petition.

Accordingly, **IT IS ORDERED** that the petition for writ of habeas corpus is
**DENIED WITH PREJUDICE**. (Dkt. # 1).

**IT IS FURTHER ORDERED** that a certificate of appealability is **DENIED**.   IT IS
FURTHER ORDERED that petitioner will be granted leave to appeal *in forma pauperis.*


s/Arthur J. Tarnow
Arthur J. Tarnow
Senior United States District Judge

Dated:  May 29, 2013

17

*Brown v. Bergh,* U.S.D.C. No. 2:11-CV-10571

I hereby certify that a copy of the foregoing document was served upon parties/counsel of record on May 29, 2013, by electronic and/or ordinary mail.

s/Catherine A. Pickles_____
Judicial Assistant